20-mj-89 HB

| | | |
|---|---|---|
| STATE OF MINNESOTA | ) | |
| | ) ss. | AFFIDAVIT OF DAVID VOTH |
| COUNTY OF RAMSEY | ) | |

I, DAVID VOTH, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of a criminal Complaint charging Mohamed Salah HUSSEIN a/k/a "Cheese," with conspiracy to distribute fentanyl in violation of Title 21, United States Code, Sections 841(b)(1)(A) and 846.

2.  I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since February 2001. Before joining the ATF, I was employed as a Deputy United States Marshal for the Western District of Michigan from June 1996 until joining the ATF. I have conducted hundreds of investigations regarding federal and state law crimes, including narcotics and firearms violations. In my capacity as an ATF agent, my responsibilities include investigating firearms violations under Title 18 of the United States Code. The facts and information contained in this affidavit are based upon my own investigation and

SCANNED
FEB 13 2020
U.S. DISTRICT COURT ST. PAUL

observations and those of other agents and law enforcement officers involved in the investigation. All observations referenced below that were not made by me were related to me by the persons who made such observations.

3. In drug investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, the analysis of telephone records, and the use of informants and cooperating sources. I have interviewed drug traffickers, debriefed informants, and consulted with law enforcement officers who have many years of drug investigative experience.

4. Through my training, experience, and conversations with other law enforcement investigators, I am familiar with the methods used by drug traffickers to manufacture, distribute, and safeguard drugs. I am familiar with the methods employed by drug organizations in attempts to thwart detection by law enforcement, including the use of cellular telephone technology, using multiple vehicles registered to different individuals, counter surveillance techniques, and coded communications and conversations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, and witnesses. This affidavit is intended to show that there is

sufficient probable cause for the criminal Complaint and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

6. I am currently involved in the investigation of violent crimes, firearms offenses, drug trafficking, and other criminal activity. Law enforcement recently received information from a confidential reliable informant ("CRI #1"). CRI #1 has provided information in the past that officers have found to be accurate, truthful, and timely. CRI #1 has provided information that led to arrests, assisted in other investigations, and aided in the prosecution of other persons charged with crimes.

7. CRI #1 said that a male known as Mohamed Salah HUSSEIN, a/k/a "Cheese," is manufacturing and distributing large amounts of fentanyl pills known to buyers as "Mbox" pills. Your affiant is familiar with these "Mbox" pills, which have been recovered by police, along with firearms and cash, in more than one incident. Your affiant knows that these pills are referred to on the street as "Mbox" pills because they have an uppercase letter "M" inside of a square (or box) imprinted on each pill. These "Mbox" pills contain fentanyl, and have been linked to several overdoses in and around Minneapolis, Minnesota.

8. CRI #1 said that HUSSEIN is in possession of an electronic "pill press" and is producing large amounts of "Mbox" fentanyl pills in HUSSEIN's home. From training and experience, I know that a "pill press" is a device used to compress substances (often in powder form) together, in order to create an easily ingestible pill or tablet that is uniform in shape, size and weight. Pill presses can be easily purchased online and elsewhere. CRI #1 said that HUSSEIN presses the "Mbox" fentanyl pills, and then distributes them using his vehicle, which the CRI described as a black Toyota Camry.

9. CRI #1 reported that HUSSEIN regularly sells the "Mbox" fentanyl pills in the parking lot of the Hook Fish and Chicken and Popeye's restaurants located on West Lake Street in Minneapolis. HUSSEIN sells the pills from his vehicle and uses vehicles to transport the drugs and proceeds from sales. In the fall of 2019, officers this Court authorized the installation of a tracker on HUSSEIN'S vehicle, a Toyota Camry that was registered to Hussein at the address of 3066 Blaisdell Avenue South, in Minneapolis (this address is just a few blocks from the Hook Fish and Chicken and Popeye's restaurants on West Lake Street). Officers learned from monitoring the tracking device on the Toyota Camry that HUSSEIN frequently stops at locations that appear to be drug trafficking locations.

10. On November 2, 2019, the Minneapolis Airport Police interdicted a FedEx Parcel containing a large amount of suspected fentanyl pills. This parcel was sent from the State of California and addressed to an individual residing at an address in Savage, Minnesota (hereafter "the Savage residence"). MSP Airport Police obtained a search warrant and examined the contents of the parcel. Officers observed what appeared to be over a thousand pills of suspected fentanyl in the box. Officers repackaged the box and planned a controlled delivery of the package to its intended recipient at the Savage address. The pills have since been tested by the forensic science laboratory at the Minnesota Bureau of Criminal Apprehension (BCA). Lab results confirmed that there were approximately 4,741 tablets weighing a total of 516 grams. The tablets were tested based on a sampling plan derived from a statistical model. Based on the results of the testing, the BCA is 95% certain that at least 90% of the tablets (or 464 grams) contain fentanyl.

11. Later on November 2, 2019, law enforcement officers conducted a controlled delivery of the FedEx Parcel to the Savage residence. Prior to making the delivery of the package, officers obtained a search warrant for the residence in anticipation of the delivery. After delivering the package, the officers executed the search warrant at the Savage residence.

12. Ironically, after the officers made the controlled delivery, and while the officers were executing the search warrant on the Savage residence, HUSSEIN's Toyota Camry arrived at the residence. The driver of the vehicle was HUSSEIN and the passenger was D.K. The men entered the residence and were detained while the search warrant was executed.

13. During the execution of the search warrant, and while D.K. and HUSSEIN were at the residence, officers spoke to a witness at the Savage residence ("W-1"). W-1 told officers that D.K. was there to pick up the package, and W-1 showed the officers text messages between W-1 and D.K. The text messages showed that D.K. had communicated with W-1 to coordinate acquiring the package that had been delivered to the Savage residence.

14. HUSSEIN and D.K. were released, and the Toyota Camry that they arrived in was seized and towed. A search warrant for the Toyota Camry was later executed. Law enforcement officers recovered a Springfield, Model XD, 9mm pistol, serial number GM700172, from inside the vehicle. The Toyota Camry was released back to HUSSEIN, its registered owner. It should be noted that HUSSEIN does not have a criminal record prohibiting him from possessing a firearm.

15. On November 6, 2019, during a subsequent interview, W-1 told law enforcement that D.K. and HUSSEIN had retrieved similar packages from the Savage residence on two prior occasions. W-1 said that HUSSEIN had driven the Toyota Camry on both of the prior occasions.

16. W-1 further stated he/she received the parcels at the request of D.K. for a payment of $150.00. W-1 said that D.K. had used his phone to communicate with W-1 about picking up the package and its contents. W-1 showed investigators text message conversations between W-1 and D.K., which were about arranging for D.K. to pick up the package.

17. Through the use of court authorized electronic surveillance, investigators were able to obtain numerous IP addresses that HUSSEIN uses to access his social media accounts. Within the 72 hours preceding February 10, 2020, HUSSEIN used an IP address from 3066 Blaisdell Avenue South, in Minneapolis, to access his social media accounts. Investigators learned that Comcast provides the internet service at that address, and that HUSSEIN is the subscriber on the account. HUSSEIN also lists 3066 Blaisdell Avenue South, Minneapolis, as his address on his driver's license and on the vehicle registration for his Toyota Camry.

18. Based on the above information, as well as other information developed over the course of the investigation, on February 10, 2020, law

enforcement obtained a search warrant for 3066 Blaisdell Avenue South from Hennepin County District Court. The address is a townhome that is located within a cluster of other townhomes along Blaisdell Avenue between Lake Street and 31st Street, in South Minneapolis.

19. On February 11, 2020, law enforcement executed the search warrant at 3066 Blaisdell. When officers were setting up surveillance prior to executing the warrant, they encountered HUSSEIN walking through the buildings in the townhome complex. Officers detained HUSSEIN while they conducted the search.

20. When officers entered the residence at 3066 Blaisdell, one female was present. This female, who was identified as S.Y.A., told officers that she lived at the residence and that she is HUSSEIN's "auntie." S.Y.A. told officers that HUSSEIN lives in the basement of the residence. The basement of the residence is a single room with a bed, wardrobe closets, and other indicia that it is used as a bedroom. Large-sized male clothing and shoes were found throughout the room. HUSSEIN is a large man; he is approximately 6 feet, 5 inches tall and weighs approximately 250 pounds. Officers also located mail addressed to HUSSEIN, as well as HUSSEIN's passport, in the basement.

21. During their search of the basement, officers recovered a plastic baggie full of "Mbox" pills that appear to be identical to the pills recovered

from the Savage residence on November 2, 2019. The pills have an uppercase letter "M" inside of a square (or box) imprinted on each pill. Because of the danger in handling fentanyl, officers are not allowed to touch the pills. Therefore, the pills have not yet been counted or tested. However, based on the size, weight, and appearance of the package, officers estimate that it contains more than 1,000 fentanyl pills. The plastic baggie of Mbox pills was recovered from inside of a sock that had been stuffed into the lining of a sleeve of a large-sized maroon winter jacket.

22. During their search of the basement, officers also recovered approximately $25,185 in United States currency stashed in three different places: $11,145 inside of a silver jacket; $800 in a gold jacket; and $13,240 in a shoebox. Two more sums of money were recovered from other locations in the townhome during the search: $2,800 in an upstairs bedroom; and $3,300 in the kitchen, for a total of $31,285 recovered from the townhome.

23. HUSSEIN was placed under arrest following the search. On February 12, 2020, during a custodial, mirandized statement to law enforcement, HUSSEIN admitted that he lives in the basement of 3066 Blaisdell, and that the property in the basement belongs to him.

24. Further your Affiant sayeth not.

Respectfully submitted,

_____
DAVID VOTH, ATF Special Agent


Subscribed and sworn to before me on February 13, 2020

_____
Hildy Bowbeer
UNITED STATES MAGISTRATE JUDGE