# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
Case No. 20-mj-0089 (HB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION OF THE ORDER OF DETENTION** |
| v. | |
| MOHAMED SALAH HUSSEIN, | |
| Defendant. | |

This matter is before the Court on Defendant Mohamed Salah Hussein's Motion for Reconsideration of the Order of Detention [Doc. No. 13]. The Court finds that the matter is suitable for determination without a hearing and is submitted on the papers. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

Defendant is charged with conspiracy to distribute 400 grams or more of a mixture containing fentanyl, in violation of 21 U.S.C. § 841(b)(1)(A) and § 846.[1] (Compl. [Doc. No. 1].) On February 19, 2020, Honorable David Schultz, United States Magistrate Judge, held a hearing on the Government's Motion for Detention pursuant to 18 U.S.C. § 3142(f)(2). [Doc. No. 7.] Before the hearing, a Pretrial Services officer interviewed

---

[1] Defendant was charged in a criminal complaint on February 13, 2020. The parties filed a joint motion for extension of the time for the government to file its indictment to March 31, 2020, which the Court granted on March 4, 2020 [Doc. No. 12]. Pursuant to the District of Minnesota General Order No. 2 issued on March 17, 2020, and this Court's Order of April 10, 2020 [Doc. No. 19], all pretrial deadlines have been continued until April 16, 2020.

Defendant and reviewed his criminal history, and issued a report recommending detention, finding that Defendant presented a risk of non-appearance and a danger to the community. [Doc. No. 9.] At the hearing, Judge Schultz found there was probable cause to support the charges and ordered Defendant detained. (*See* Minute Entry Feb. 19, 2020 [Doc. No. 7].) The court subsequently entered a written detention order on February 25, 2020, finding that no condition or combination of conditions would reasonably assure the safety of the community. (Order of Detention at 1 [Doc. No. 10].) The Court specifically found:

- Defendant had no verified address and had been unemployed for approximately one year. He had also failed to appear on multiple occasions for two prior offenses.
- Fentanyl, the drug Defendant was alleged to have been trafficking, is highly dangerous and had caused numerous overdose injuries and deaths.

(*Id.* at 2.) The Court concluded, pursuant to 18 U.S.C. § 3142(e), that detention was appropriate because no condition or combination of conditions would reasonably assure the safety of the community or defendant's appearance in court. (*Id.* at 3.)

Defendant filed a motion to reconsider detention on April 3, 2020. [Doc. No. 13.] He bases his motion on 18 U.S.C. § 3142(f)(2)(B), which allows a Court to reopen a detention hearing and reconsider the original detention decision when new information that has a material bearing on the detention decision comes to light, and on 18 U.S.C. § 3142(i), which allows a court to temporarily release a person if "necessary for preparation of the person's defense or for another compelling reason." (*See* Def.'s Mot.

Reconsideration at 1–2.)  Defendant asks to be released on house arrest with GPS monitoring to his aunt's home because "[t]imes have changed and Mr. Hussein is being unreasonably exposed to the COVID-19 virus in the jail when safe alternatives for his release exist."  (*Id.* at 6.)

Defendant is detained at the Sherburne County Jail ("Jail"), which he states houses approximately 270 federal detainees.  (*Id.* at 4.)  He submits that the conditions of pretrial confinement at the Jail create an ideal environment for the transmission of COVID-19 because the detainees are housed in "units where they sleep, eat and spend the overwhelming majority of their time," and because "medical facilities are limited."  (*Id.* at 4.)  Defendant acknowledges that the Jail has taken preventive measures such as suspending all in-person visits, but points out that such measures have limited his ability to consult with his attorney and prepare his case.  (*Id.*)

After Defendant filed his motion for reconsideration, the Court requested and received an updated report and recommendation from Pretrial Services.  (Status Report [Doc. No. 16].)  As part of developing her report, the Pretrial Services officer who prepared the updated report contacted Defendant's aunt—the person with whom he had lived prior to his detention and with whom he now proposes to stay—about a possible release plan.  (*Id.* at 1.)  Defendant's aunt indicated "the family . . . decided it would be best" for Defendant to stay with a different family member, another of Defendant's aunts.  (*Id.*)  The Pretrial Services officer then spoke with that family member, who expressed a willingness to host Defendant if he were released, and agreed to let the officer take a "virtual tour" of the residence via FaceTime.  (*Id.* at 2.)  The second aunt thought

3

Defendant "was in jail due to unpaid bills," but when informed that he had been charged with a drug offense she still indicated she was willing to let Defendant live with them. (*Id.* at 1.) She stated, however, that she did not "want any strangers in the home at this time," including the Pretrial Services officer who would be supervising Defendant were he to be released. (*Id.* at 2.) The updated report and recommendation, filed under seal but made available to counsel, concludes that the "proposed release plan" does not adequately address the risk factors and reiterates the prior recommendation for detention due to the lack of a condition or combination of conditions that would reasonably assure the safety of the community. (*Id.*)

The Court has also considered the Government's memorandum in opposition to Defendant's motion for reconsideration [Doc. No. 17], including the affidavit of Brian Frank, the Jail Administrator of the Sherburne County Jail [Doc. No. 17-1]. Frank stated that as of March 25, 2020, there were no known cases of COVID-19 at the Jail.[2] (Frank Aff. ¶ 3.) Frank also represented that the Jail has the "structural, operational, and medical ability to protect its inmates," including a compartmentalized ventilation system, a 14-day quarantine unit for new arrivals, and a newly heightened cleaning regimen. (*Id.* ¶¶ 2–3, 6–9, 11.) Frank indicated that detainees are permitted to visit with counsel via video streaming in the common areas of the housing unit, which is presently free and "not recorded or expressly monitored." (*Id.* ¶ 18.)

---

[2] Defendant has not submitted any information, nor is the Court aware of any, indicating that a case of COVID-19 has been identified at the Jail since March 25, 2020.

## II. DISCUSSION

### A. Request to Reopen Detention Hearing under § 3142(f)

In determining whether there are conditions of release that will reasonably assure the appearance of a defendant and the safety of the community, the Bail Reform Act requires the Court to consider the following factors: "(1) the nature and circumstances of the offense charged"; "(2) the weight of the evidence against the person"; "(3) the history and characteristics of the person"; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Section 3142(f) permits a court to reopen a pretrial detention hearing

> if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

The Court finds here that the COVID-19 pandemic, in the context of the individualized assessment this Court must make under the Bail Reform Act, does not in and of itself raise a change in circumstances that has a "material bearing" on whether there are conditions of release *for this Defendant* that will reasonably assure the safety of the community. This Court echoes the comments of the Honorable Donovan W. Frank, United States District Judge, about "the gravity of the COVID-19 pandemic," and, like Judge Frank, "is mindful of the unprecedented circumstances it presents both for society at large and for the prison system." *United States v. Morris*, No. 17-cr-107 (DWF/TNL), 2020 WL 1471683, at *3 (D. Minn. Mar. 26, 2020). But without more, this Court is "not convinced the COVID-19 pandemic is a 'material change of circumstances' warranting a

5

renewed evaluation of [a] prior detention order." *United States v. Banks,* No. 4:19-cr-3116, 2020 WL 1450549 (D. Neb. Mar. 25, 2020); *see also, e.g., United States v. Aiad-Toss*, No. 4:19-cr-521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020); *United States v. Woods*, No. 19-cr-20112-02, 2020 WL 1493488, at *4 (E.D. Mich. Mar. 28, 2020); *United States v. Munguia*, No. 3:19-cr-191-B, 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020). *But see United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *20 (D. Md. Mar. 17, 2020) (stating the COVID-19 health risk "can indeed constitute new information having a material bearing on whether there are conditions of release that will reasonably assure the appearance of detained defendants and secure the safety of the community" but finding that "detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act").

In the context of the § 3142(g) factors, the only factor to which Defendant's motion could potentially relate is the third factor, the history and characteristics of the person, which allows the Court to consider, *inter alia*, an individual's "family ties" and "physical and mental condition." *See* § 3142(g)(3)(A). As to the latter, Defendant has not shown how the dynamics of the current COVID-19 situation relate to him particularly in a way that could not be said of all detainees. He has not identified or offered evidence of a personal health condition that would make him particularly susceptible to COVID-19 or to serious complications associated with the virus, let alone in a way that would bear materially on the statutory considerations underlying the Court's decision about detention.

As to his family ties, Defendant argues he has a family member with whom he

could reside on release and urges that "[w]ith the stay at home order in place by Governor Walz, it will not be difficult for [him] to stay at home and be monitored with an electronic home monitoring device and/or GPS device." But the Court has seen nothing to persuade it that the Governor's stay-at-home order materially changes the circumstances that led Magistrate Judge Schultz to conclude there were no conditions of release (including, implicitly, home incarceration with electronic monitoring) that would suffice to ameliorate the risk of non-appearance or the danger to the community. The Court's view is reinforced by the updated report from Pretrial Services, which reaffirms the earlier recommendation that there are not conditions of release in the community that would be adequate to ensure his appearance for future proceedings or the safety of the community. The Court notes in particular the challenges Pretrial Services identified with Defendant's proposed release plan, including that the only identified relative who expressed a willingness to allow Defendant to reside with her has nevertheless stated she would not be willing to have Defendant's supervising officer enter her home, thus removing a key tool of pretrial supervision.

Accordingly, the Court finds that Defendant has not identified new, particularized information that would shift the balance of the § 3142(g) factors on which Pretrial Services based its original (and renewed) recommendation and this Court based its Order of Detention. The Court therefore concludes that reconsideration of detention is not warranted under § 3142(f).

**B.    Request for Temporary Release under § 3142(i)**

In the alternative, Defendant argues that his temporary release is called for under

7

§ 3142(i). Section 3142(i) permits a judicial officer to "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Courts have used this provision "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-cr-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted). In making an individualized determination about whether "COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i)," a court should consider these nonexclusive factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

Consistent with the above discussion and the Pretrial Services reports, the Court first finds the original grounds for detention were strong. Second, as already noted, Defendant does not identify specific COVID-19 concerns that are either urgent or distinguishable from those facing other pretrial detainees at this time. Third, Defendant's proposed release plan does not address the fact that while temporary release into the community "could potentially mitigate the risk of infection, . . . the opposite might also be true." *United States v. White*, No. 19-cr-204 (ECT/BRT), slip op. at 9 (D. Minn. Apr.

8

1, 2020). Fourth, given that Pretrial Services could not identify conditions that would reasonably assure Defendant's appearance or the safety of the community if Defendant were released, and considering the uncertain availability of testing and occasional asymptomatic presentation of COVID-19, it is simply not known whether Defendant's release would increase the risk of COVID-19 infection to others, including family members.

As mentioned, the above four factors are not exclusive, and the Court considers also the measures undertaken by the Jail and the Court to protect Defendant's ability to prepare his defense and consult privately with his lawyer. Although the Jail has provided for video consultation between detainees and their lawyers and videoconferencing in connection with court appearances (*see* Frank Aff. ¶¶ 17–18), this Court is well aware that facilities for private consultation between detainees and their lawyers are limited. However, the Court understands that efforts are actively underway to expand the availability of means for such private consultation at the Jail. In addition, the District Court has excluded the time period between March 17, 2020, and April 16, 2020, from the Speedy Trial Act in part to assuage the restrictions imposed by the Jail that have significantly impacted the ability of detainees such as Defendant to consult meaningfully with their attorneys. (General Order No. 2 at 1–2.) At this time, Defendant has not shown these measures, as applied in the circumstances of his case, to be insufficient to an extent that renders release *necessary* to the preparation of his defense or that otherwise presents a "compelling reason" for release under § 3142(i).

Accordingly, **IT IS HEREBY ORDERED** that Defendant Mohamed Salah

Hussein's Motion for Reconsideration of the Order of Detention [Doc. No. 13] is **DENIED**.

Dated: April 13, 2020

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge